EXHIBIT 1

Electronically Filed
Kahalah A. Clay
Circuit Clerk
Elysia Agne
21L0461
St. Clair County
6/14/2021 3:42 PM
13677459

## IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

RONALD D. KOHLMILLER AND THERESA M. KOHLMILLER,        )
                                        )

       Plaintiffs,        )
                                          )

v.        )        Case No. 21-L-0461
                                          )

CONSUMER LAW PROTECTION, LLC, RESORT TRANSFER GROUP, LLC d/b/a CONSUMER LAW PROTECTION LAWYERS, SQUARE ONE DEVELOPMENT GROUP, INC., PREMIER RESERVATION GROUP, LLC, DAN CHUDY, MAKENZIE DAVID WESTCOTT, MATT TITUS, AMY D. DEFATTE, GEORGE L. REED, LOUANN REED,
AND
CRESTLINE HOTELS & RESORTS, LLC,
Serve:
   Illinois Corporation Service
   801 Adlai Stevenson Drive
   Springfield, IL  62703
AND
EXCEL HOLDINGS 3 LLC,
Serve:
   Illinois Corporation Service
   801 Adlai Stevenson Drive
   Springfield, IL  62703

       Defendants.

## FIRST AMENDED COMPLAINT

COME NOW Plaintiffs, Ronald Kohlmiller and Theresa Kohlmiller, for their Complaint against Defendants, Consumer Law Protection, LLC, Resort Transfer Group, LLC d/b/a Consumer Law Protection Lawyers, Square One Development Group, Inc., Crestline Hotels & Resorts, LLC, Excel Holdings 3 LLC, Premier Reservation Group, LLC, Dan Chudy, Makenzie David Westcott, Matt Titus, Amy D. DeFatte, George L. Reed, LouAnn Reed, and state:

## GENERAL ALLEGATIONS

1.      Plaintiffs, Ronald D. Kohlmiller ("Ronald") and Theresa M. Kohlmiller ("Theresa"), husband and wife, are residents of Edwardsville, Madison County, Illinois and citizens of the State of Illinois.

2.      Defendant, Consumer Law Protection, LLC ("Consumer Law"), is a limited liability company organized and existing under and by virtue of the laws of the State of Missouri.  The identity and citizenship of its members, and therefore its citizenship, is partially unknown.  It maintains its principal office and place of business in Pevely, Missouri.  On information and belief, it is a citizen of the State of Missouri and possibly other states.

3.      Defendant, Resort Transfer Group, LLC d/b/a Consumer Law Protection Lawyers ("Resort Group"), is a limited liability company organized and existing under and by virtue of the laws of the State of Missouri.  The identity and citizenship of its members, and therefore its citizenship, is partially unknown.  It maintains its principal office and place of business in Pevely, Missouri.  On information and belief, it is a citizen of the State of Missouri and possibly other states.

4.      Defendant, Square One Development Group, Inc. ("Square One"), is a corporation organized and existing under and by virtue of the laws of the State of Missouri.  It maintains its principal office and place of business at 1610 Des Peres Road, St. Louis County, Missouri 63131.  It is a citizen of the State of Missouri.

5.     Square One Holding Group, Inc. (not named as a Defendant) was a corporation that is now voluntarily dissolved.  It maintained its principal office and place of business at 1610 Des Peres Road, St. Louis County, Missouri 63131.  It was a citizen of the States of Colorado and Missouri.

6.     At all times relevant, Defendant, Crestline Hotels & Resorts, LLC ("Crestline"), was the manager of the Hilton Garden Inn, located at 360 Regency Park Drive, O'Fallon, Illinois 62269.  It is a limited liability company organized and existing under and by virtue of the laws of the State of Delaware, which maintains its principal office and place of business at 3950 University Drive, Suite 301, Fairfax, Virginia 22030.  The identity and citizenship of its members, and therefore its citizenship, is unknown.  Excel Holdings 3 LLC ("Excel") is the owner of the Hilton Garden Inn, located at 360 Regency Park Drive, O'Fallon, Illinois 62269.  It is a limited liability company organized and existing under and by virtue of the laws of the State of Delaware, which maintains its principal office and place of business at1621 North Kent Street, Suite 1115, Arlington, Virginia 22209.

7.     Defendant, Premier Reservation Group, LLC ("Premier Reservation"), is a limited liability company organized and existing under and by virtue of the laws of the State of Missouri.  The identity and citizenship of its members, and therefore its citizenship, is partially unknown.  It maintains its principal office and place of business in Pevely, Missouri.  On information and belief, it is a citizen of the State of Missouri and possibly other states

8. Defendant, Dan Chudy ("Chudy"), is an employee and agent of Consumer Law, Resort Group, Square One, Premier Reservation, George L. Reed and LouAnn Reed.  He is a resident and citizen of the State of Missouri.

9. Defendant, Makenzie David Westcott ("Westcott"), is an employee and agent of Consumer Law, Resort Group, Square One, Premier Reservation, George L. Reed and LouAnn Reed.  He is a resident and citizen of the State of Missouri.

10. Defendant, Matt Titus ("Titus"), is a manager of Square One, Resort Group and Premier Reservation.  He is a resident and citizen of either Missouri or Illinois.

11. Defendant, Amy D. DeFatte, ("DeFatte"), is an employee and agent of Consumer Law, Resort Group, Square One, Premier Reservation, George L. Reed and LouAnn Reed.  She is a resident and citizen of either Missouri or Illinois.

12. Defendant, George L. Reed ("George"), is the principal owner and manager of Consumer Law, was a manager of Square One as late as January 29, 2019, is an owner of Resort Group, and is an owner and manager of Premier Reservations.  He is a resident of Defiance, St. Charles County, Missouri and a citizen of the State of Missouri.  He is married to LouAnn Reed ("LouAnn").  George and LouAnn have been married for many years.

13. Defendant, LouAnn, is a resident of Defiance, St. Charles County, Missouri and a citizen of the State of Missouri.  She is married to George for

many years.  She is an owner of Consumer Law, Resort Group, Square One, and Premier Reservations, among other businesses.

14.     At all times relevant, George and LouAnn owned and/or controlled Consumer Law, Resort Group, Square One, and Premier Reservations, among other businesses.  They co-mingled employees, assets and income from their various business organizations, including Defendants Consumer Law, Resort Group, Square One, and Premier Reservations.

15.     Beginning in about 2018, George and LouAnn used their various business organizations, including but not limited to Consumer Law, Resort Group, Square One, and Premier Reservations, to mislead timeshare owners into paying large sums of money up front for the purpose of, purportedly, cancelling their timeshare agreements.

16.     Defendants, and each of them, are currently under injunction by the United States District Court for the Western District of Missouri, which precludes them from soliciting timeshare owners with offers to cancel their timeshare contracts with respect to any timeshares issued by Diamond Resorts Corporation.  The injunction was issued in *Diamond Resorts Corporation v. Mutual Release Corporation a/k/a 417 MRC LLC, et al.*, Case No. 6:18-cv-03053 on or about May 2, 2019.  A copy of that injunction, without Exhibit 1 to the injunction, is attached hereto and incorporated herein by reference as Exhibit A.

17.     The activities Defendants engaged in with respect to Ronald and Theresa are the same type of activities that Defendants are enjoined from doing

with respect to timeshare contracts issued or managed by Diamond Resorts Corporation.  The injunction attached as Exhibit A applies not only to the named enjoined party, Chudy, but also as to all his business partners, officers, agents, successors, assigns, servants, employees, co-workers, attorneys and those persons acting in active concert or participation with them who have actual notice of the permanent injunction, as set forth on p.2 of Exhibit A.

18.    Defendants, and each of them, knew that their activities were unlawful at the time they coerced Ronald and Theresa into paying for their services to cancel their timeshare contract with Worldmark Resort, which is a Wyndham timeshare entity owned and/or controlled by Wyndham, as more specifically set forth below.

19.    At all times relevant, George and LouAnn used their businesses, including Consumer Law, Resort Group, Square One, and Premier Reservations, among others interchangeably and indiscriminately, for the purpose of extracting money from timeshare owners under false pretenses and under the pretext that they will provide valuable services to the timeshare owners by persuading the timeshare companies to terminate their timeshare agreements.

20.    Defendants, collectively, operate their timeshare termination racket by falsely representing that they provide a money-back guaranty.  Instead, the contracts employed by Defendants, collectively, contain so many loopholes and conditions for the money-back guaranty that, in actuality, the guaranty is that

no money will be paid back if Defendants, collectively, are unable to persuade the timeshare companies to terminate the timeshare agreements.

21.     Defendants, collectively, also represent that they provide valuable services to timeshare owners by arranging for the cancellation of their timeshare contracts when, actually, many timeshare companies, such as Worldmark Resort and Wyndham have established programs permitting their customers to exit their timeshare contracts.  Worldmark Resort and Wyndham currently have a program known as the Certified Exit by Wyndham, which is free to its customers.

22.     Defendants, Titus, Chudy, Westcott and DeFatte, at all times relevant, were employed by and acted as agents for George and LouAnn through Consumer Law, Resort Group, Square One, and Premier Reservations, which at all times relevant were the alter-egos of, and assetless shell companies employed by, George and LouAnn for the purpose of defrauding consumers.

23.     Defendants, Crestline and Excel, knew that Defendants, Consumer Law and the related Defendants, were operating a high-pressure sales event for the purpose of pressuring timeshare owner consumers into prepaying for valueless and overvalued services through the use of deceptive and fraudulent practices, as described more specifically below.

24.     On, or prior to, August 5, 2020, Defendant, Excel, through its manager, Defendant, Crestline, entered into a rental agreement with one or more of the other Defendants including, but not limited to Consumer Law, to

rent a banquet room at the Hilton Garden Inn at 360 Regency Park Drive in
O'Fallon, Illinois for the purpose of inviting prospective timeshare owners to a
high-pressure sales meeting for the purpose of defrauding them.

25.    At all times relevant, Defendants, Consumer Law, Resort Group,
Square One, Premier Reservations, Crestline, Excel, Chudy, Westcott, Titus,
DeFatte, George and LouAnn, were acting in concert for the common purpose
of inducing the timeshare owners to prepay large sums to some of the
Defendants as prepayment for valueless and/or overvalued services to
terminate existing timeshare contracts.

26.    At all times relevant, Defendant, Premier Reservations, operated a
telemarketing-type business at 8600 Daniel Dunklin Boulevard, Pevely,
Missouri.  The remaining Defendants affiliated with Consumer Law use that
address as a mail-drop, but do not actually maintain an office or business
operations there.

27.    Defendants, solicited Ronald and Theresa to come to the August 5,
2020 banquet at the Hilton Garden Inn by sending them a mailer/flyer from
the telemarketing operation of Premier Reservations at 8600 Daniel Dunklin
Boulevard, Pevely, Missouri.  While the return address on the mailer/flyer
identified the sender as Consumer Law, at 8600 Daniel Dunklin Boulevard,
Pevely, Missouri, on information and belief, it was prepared and sent by the
telemarketers employed by Premier Reservations and through it, George and
LouAnn.  The telemarketers are the only employees of George and

LouAnn/Premier Reservations who work at the tin building located at 8600 Daniel Dunklin Boulevard, Pevely, Missouri.

28.    Premier Reservations, through its telemarketers, participated in the fraudulent scheme described in this Complaint by preparing and mailing the mailer/flyer to timeshare owners, such as Ronald and Theresa and Eugene and Linda Smith (see St. Clair County Case No. 21L0335) for the purpose of soliciting timeshare owners to attend high-pressure banquets which are scheduled for the purpose of inducing them to prepay for valueless or overvalued services in terminating their timeshare agreements.

29.    Prior to August 5, 2020, Ronald and Theresa received a mailer/flyer inviting them to secure a reservation for a banquet on either August 4, 2020 or August 5, 2020, by calling a toll-free number.  A copy of a mailer/flyer is attached hereto and incorporated herein by reference as Exhibit B.  While it identifies Consumer Law on the return address, it was prepared and mailed by the same telemarketers employed by Premier Reservations, which prepared and sent a similar mailer/flyer to Eugene and Linda Smith prior to the banquet they attended at the Four-Points Sheraton in Fairview Heights, Illinois, on March 4, 2021.  A copy of the mailer/flyer sent to Eugene and Linda Smith is attached hereto and incorporated herein by reference as Exhibit C.  Premier Reservations is listed on the return address on Exhibit C, but at the same address that was used for Consumer Law on Exhibit B.

30.    Consumer Rights Council, a not-for-profit Missouri corporation, was formed by George and LouAnn and registered on April 30, 2020, for the

sole purpose of falsely claiming that "Consumer Law Protection is accredited by the Consumer Rights Council ("CRC"), an independent advocacy organization dedicated to helping timeshare owners ***".  See p.1 of Exhibits B and C, respectively.

31.    The statements in Exhibits B and C that Consumer Law is accredited by Consumer Rights Council, an independent advocacy organization is false.  In essence, Consumer Law "accredited" itself through George and LouAnn who own and control both Consumer Law and the Consumer Rights Council.  The timeshare owner/consumers, such as Ronald and Theresa and Eugene and Linda Smith, were misled into believing that Consumer Law was somehow accredited by an independent organization.

32.    On September 30, 2019, Wyndham Vacation Ownership, Inc. and related Wyndham entities, filed suit against Square One Development Group, Inc. d/b/a Square One Group, Square One Holding Group, Inc., George L. Reed and LouAnn Reed, among others, alleging that Defendants in that case, and the same Defendants in this case, were a network of interrelated entities that exist for the sole purpose of scamming timeshare owners and timeshare developers.  George and LouAnn then formed Consumer Law, Resort Transfer and Premier Reservations, for the purpose of transferring their operations to new entities for the continued purpose of defrauding timeshare owners. Consumer Law, Resort Transfer and Premier Reservations, among others, were then added as Defendants to the lawsuit filed by the Wyndham entities.  See *Wyndham Vacation Ownership, Inc., et al. v. Square One Development Group,*

*Inc., et al.*, Case No. 6:20-cv-00643-RBD-EJK, pending in the United States District Court for the Middle District of Florida, Orlando Division.  A copy of the first five pages of the Third Amended Complaint for Damages and Injunctive Relief is attached hereto and incorporated herein by reference as Exhibit D.

33.     The original case by the Wyndham entities against Square One, et al., was filed on September 30, 2019.  *Wyndham Vacation Ownership, Inc., et al. v. Square One Development Group, Inc., et al.*, Case No. 6:19-cv-01872-RBD-EJK.

34.     Before Defendants, collectively, defrauded Ronald and Theresa on August 5, 2020, attorney Eric Lee filed an Appearance on behalf of Defendant, Square One Development Group, Inc., on October 28, 2019 in the Wyndham case.  See *Wyndham Vacation Ownership, Inc., et al. v. Square One Development Group, Inc., et al.*, Case No. 6:19-cv-01872-RBD-EJK, pending in the United States District Court for the Middle District of Florida, Orlando Division.  The 2020 Florida case was then severed from the 2019 case.

35.     Defendants, Square One, George and LouAnn knew that Square One was being sued by the Wyndham entities alleging fraud and related claims arising from Defendants operation of charging timeshare owners to obtain cancellation of their timeshare contracts, and knew that Defendant, Chudy, and his associates, which included them, were under injunction from these activities with respect to another timeshare company, before the banquet of August 5, 2020.

36.    Plaintiffs Ronald and Theresa, had a timeshare contract with Worldmark Resort, an organization controlled or owned by Wyndham, which they used primarily for personal vacation trips to Branson, Missouri.

37.    The sales banquet was held on or about August 5, 2021 at the Hilton Garden Inn in O'Fallon, Illinois.  Approximately 12 couples, as timeshare owners, were the guests.  Chudy and Westcott were the primary salesmen/presenters at the banquet, but they were assisted by several other people affiliated with Consumer Law and George and LouAnn.

## COUNT I
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT AGAINST ALL DEFENDANTS

38.    Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 34 as fully set forth above.

39.    At the August 5, 2020 banquet, Plaintiffs Ronald and Theresa were subjected to a high-pressure sales presentation by Defendants.  Westcott was the main speaker.  He described three (3) house bills, one numbered 453, house bill 7025 in 2015 and house bill 435, and stated that these house bills provided that Plaintiffs could not hire an attorney to sell their timeshares, and that even though these house bills failed to pass, the timeshare people behind them would keep presenting them until they passed.  It gave Plaintiffs the impression that Westcott and Chudy were lawyers.  They are not.  Westcott and Chudy did not state that Wyndham had a program permitting timeshare owners to exit their contracts, did not state that Chudy was under an injunction from engaging in sales activities of this type with respect to another timeshare company and did not state the Wyndham was suing Defendants

claiming false advertising and related charges against Defendants for engaging in sales activities of this type.

40.     At the August 5, 2020 banquet, Defendants presented Plaintiffs with a Timeshare Termination, which they signed and Chudy signed.  A copy of the Timeshare Termination is attached hereto and incorporated herein by reference as Exhibit E.  Although Exhibit E refers to a total of four (4) pages, Plaintiffs were given only the first three (3) of the four (4) pages.

41.     At the August 5, 2020 banquet, Defendants presented Plaintiffs with a Transfer Hold, which they signed.  A copy of the Transfer Hold is attached hereto and incorporated herein by reference as Exhibit F.

42.     At the August 5, 2020 banquet, Defendants presented Plaintiffs with a Termination Agreement which they signed, Chudy signed and Westcott signed, a copy of which is attached hereto and incorporated herein by reference as Exhibit G, a Timeshare Worksheet, which they signed, a copy of which is attached hereto and incorporated herein by reference as Exhibit H, and a document reflecting their total cost of ownership of the timeshare, three options and a Net Termination Agreement amount, a copy of which is attached hereto and incorporated herein by reference as Exhibit I.

43.     Ronald is 79 and Theresa is 75.  They are retired.

44.     At the August 5, 2020 banquet, Defendants also presented Plaintiffs with an Attorney Referral Form, requesting referral to legal counsel or potential representation regarding their dispute with "a timeshare company or

resort", which Plaintiffs signed.  A copy of the Attorney Referral Form is attached hereto and incorporated herein by reference as <u>Exhibit J</u>.

45.    At the August 5, 2020 banquet, Defendants informed Plaintiffs that they were required to pay $16,040 as a service fee for the termination of their timeshare agreement with Worldmark Resort, and Plaintiffs paid Consumer Law $16,040 at that time.

46.    The Timeshare Agreement Plaintiffs were attempting to cancel, was used by them for family, personal and vacation purposes.

47.    At all times herein relevant, Consumer Law, Resort Group, Square One, Premier Reservation, Chudy, Westcott, Titus, DeFatte, and George and LouAnn, were engaged in the conduct of trade and/or commerce within the State of Illinois as defined by 815 ILCS §505/2 by selling timeshare termination services to the public, Defendants, Crestline and Excel, were engaged in the conduct of trade and/or commerce within the State of Illinois as defined by 815 ILCS §505/2 by operating and managing the Hilton Garden Inn in O'Fallon, St. Clair County, Illinois.

48.    Defendants Consumer Law, Resort Group, Square One, Premier Reservation, Chudy, Westcott, Titus, DeFatte, and George and LouAnn, engaged in unfair and/or deceptive acts or practices, and engaged in oppressive conduct, through the employment and use of deception, fraud, false pretenses, false promises, misrepresentations, concealment, suppression and/or omission of material facts, by falsely representing that house bills would be repeatedly presented to the legislature by the timeshare companies

until they passed, which would prevent timeshare owners from retaining attorneys to terminate their contracts and by falsely representing that Plaintiffs needed to hire Defendants now, before such legislation was passed and by falsely representing that Consumer Law was accredited by an independent organization, while concealing that Wyndham, the other party to Plaintiffs timeshare contract, had a free exit program and while concealing the fact that Defendants were under injunction in another case prohibiting them from engaging in sales activities of this type with respect to another timeshare company, and that Defendants were currently defendants in lawsuit filed by Wyndham and related Wyndham entities claiming Defendants were engaging in false advertising by representing their timeshare termination services to members of the public, such as Plaintiffs, while concealing the fact that these Defendants had a long history of fraud and deceptive practices in defrauding timeshare owners in the past, while concealing the fact that Consumer Law, Square One, George and LouAnn had an "F" rating (the lowest possible rating) with the Better Business Bureau ("BBB") and while concealing the fact that numerous customers who had employed Defendants in the past, for services of this type, had subsequently complained that they were misled and defrauded and cheated.

49.   Defendants, Crestline and Excel, were engaged in unfair and/or deceptive acts or practices, and engaged in oppressive conduct, through the employment and use of deception, fraud, false pretenses, concealment, suppression and/or omission of material facts, by concealing from Plaintiffs,

Ronald and Theresa, the fact that Consumer Law, Resort Group, Square One, George and LouAnn and their employees and agents, were using its banquet room for the purpose of deceiving and defrauding Plaintiffs, Ronald and Theresa, and by concealing from Plaintiffs, Ronald and Theresa, that these Defendants had a long history of deceiving and cheating timeshare owners with respect to timeshare termination services; and by acting in concert with the other Defendants.

50.    Defendants, collectively, intended that Plaintiffs, Ronald and Theresa, rely on their false representations and concealments.

51.    On or about August 24, 2020, Plaintiffs Ronald and Theresa spoke with Westcott by telephone at 417.337.2999.  Westcott told Plaintiffs to drop off the documents that had been submitted to them on August 6, 2020 at 8600 Daniel Dunklin Boulevard, Pevely, Missouri, and that Chris Carroll would pick them up.

52.    On or about August 24, 2020, Plaintiffs drove to Pevely, Missouri. They found that 8600 Daniel Dunklin Boulevard was a square tin building with nothing on the outside.  On the inside, it had approximately 50 (mostly young) people manning telephones.  It was a telemarketing operation.  When Plaintiffs asked for Chris Carroll, they were told that the tin building was a drop off place for mail for Consumer Law and related organizations.  Plaintiffs were told to leave their documents and someone would pick them up for Consumer Law and related parties.  Plaintiffs left these documents with Steve Henkins, at the tin building.

53.     After August 5, 2020, Plaintiffs learned of a BBB report about Consumer Law, Square One and George and LouAnn, and that these businesses had an "F" rating.  A copy of parts of a BBB rating for Consumer Law and Square One, reflecting that George and LouAnn own these businesses, is attached hereto and incorporated herein by reference as Exhibit K.

54.     Also attached hereto and incorporated herein by reference as Exhibit L is a Consumer Warning issued by the BBB warning consumers to use caution when doing business with Consumer Law and Square One, among other companies owned by George and LouAnn.

55.     On August 25, 2020, Plaintiffs, Ronald and Theresa, telephoned Westcott and asked him about the BBB report and asked whether they could get out of their agreement with Consumer Law.  He said Plaintiffs could not get out of their agreement and that he would have a lawyer telephone Plaintiffs. Some person then did call Plaintiffs (a male) and said that Consumer Law had twenty-four (24) months to fulfill its contract or they would get their money back.  He said there must be "certification of completion".

56.     After August 25, 2020, Plaintiffs telephoned Westcott and Chudy but received no answers.  Instead, Plaintiffs received recorded messages that their mailboxes were full and Plaintiffs could not leave a message.

57.     On December 3, 2020, Plaintiffs called Westcott.  His mailbox was full.  They called Alex at 314.686.9630.  That number was not a valid telephone number.  Plaintiffs called Tricia at 314.686.4630.  She was not available. Plaintiffs were informed that she would call back.  She did not call back.

Plaintiffs then telephoned Geoff (or Jeff) at 314.686.4517.  The receptionist answered "Square One".  She said she would have someone from Consumer Law return the call to Plaintiffs.  No one returned the call.

58.   On December 4, 2020, Plaintiffs called Geoff (or Jeff) and was told he was out of the office, but would call back.  No one called back.

59.   On December 8, 2020, Plaintiffs called Tricia.  She was not available.  She stated the address for Consumer Law was 1610 Des Peres Road, in West St. Louis County, Missouri.  The person answering the telephone said Tricia was the only one there and was way behind on her telephone calls.

60.   On December 9, 2020, Plaintiffs called Amy DeFatte at 314.686.4535, Consumer Law.  She said that Defendants could not do anything because of a "transfer hold".

61.   On December 27, 2020, Plaintiffs called Tricia.  She stated that she was looking up something about the "transfer hold" and that she would return the telephone call.  There was no return call.

62.   On December 28, 2020, Plaintiffs spoke with Geoff (or Jeff) who said there was a "transfer hold" on the cancellation of the timeshare.  Plaintiffs then sent a release to Defendant DeFatte, releasing the transfer hold and received confirmation that it had been lifted.  Geoff (or Jeff) then stated that he expected to hear back from Wyndham in thirty (30) to sixty (60) days and that Plaintiffs were to call back at that time.  Originally, Geoff (or Jeff) had stated that this would be done by December 31, 2020.

63.     On January 11, 2021, Plaintiffs received a letter from Worldmark by Wyndham concerning Plaintiffs' timeshare contract, stating that Worldmark had been contacted by a third-party seeking information about the sale of Plaintiffs timeshare contract.

64.     On January 21, 2021, Plaintiffs' hand-delivered a copy of the letter from Worldmark Resort to Matt or Mark Epstein's office in the tin building in Pevely, Missouri.  They delivered the copy of that letter to Brad Zielger.

65.     On February 8, 2021, Plaintiffs spoke to Heather because Matt (or Mark) Epstein was not available.  Heather stated that the information was not uploaded into their system and that Plaintiff should call back in 30 days.

66.     On February 24, 2021, Plaintiffs spoke to Tricia because Matt (or Mark) Epstein was not available.  She stated that on February 17, 2021, Defendants had received a verification to settle and would be drafting a settlement agreement in thirty (30) to sixty (60) days, that Wyndham would be sending Plaintiffs a cancellation to sign and that when Plaintiffs received it, they were to telephone Consumer Law.  Plaintiffs did not receive any such cancellation from Wyndham.

67.     On April 13, 2021, Plaintiffs telephoned Matt (or Mark) Epstein and was told he was not available.  They spoke to Logan who stated that Defendants had submitted a fee to Worldmark by Wyndham, which had been accepted and that Defendants were waiting to hear back from Worldmark by Wyndham.

68.     On April 26, 2021, Plaintiffs contacted their current attorney.

69.     As a direct result of these violations of the Illinois Consumer Fraud Act by Defendants, collectively, while acting in concert, Plaintiffs, Ronald and Theresa, have been damaged in the sum of $16,040, the payment made to Consumer Law.

70.     Plaintiffs, Ronald and Theresa, have incurred and will incur attorneys' fees in a sum in excess of $50,000, in prosecuting this Complaint against Defendants.  Plaintiffs, Ronald and Theresa, are entitled to recover their attorneys' fees from Defendants, under 815 ILCS §505/10(c).

71.     The conduct of Defendants, and each of them, as described above, was outrageous, willful, wanton, malicious, in conscious disregard for the rights of others, and without justification, warranting an award of punitive damages in favor of Plaintiffs, Ronald and Theresa, and against Defendant, Consumer Law, in a sum in excess of $200,000, plus a sum in excess of $200,000 for punitive damages against Defendant, Resort Transfer, plus a sum in excess of $200,000 for punitive damages against Defendant, Square One, plus a sum in excess of $200,000 for punitive damages against Defendant, Crestline, plus a sum in excess of $200,000 for punitive damages against Defendant, Excel, plus a sum in excess of $200,000 for punitive damages against Defendant, Premier Reservation, plus a sum in excess of $100,000 for punitive damages against Defendant, Chudy, plus a sum in excess of $50,000 for punitive damages against Defendant, Westcott, plus a sum in excess of $50,000 for punitive damages against Defendant, Titus, plus a sum in excess of $50,000 for punitive damages against Defendant, DeFatte, plus a sum in

excess of $500,000 for punitive damages against Defendant, George, plus a sum in excess of $500,000 for punitive damages against Defendant, LouAnn, pursuant to 815 ILCS §505/10(a).

WHEREFORE, under Count I, Plaintiffs, Ronald Kohlmiller and Theresa Kohlmiller, pray for judgment against Defendants, Consumer Law Protection, LLC, Resort Transfer Group, LLC d/b/a Consumer Law Protection Lawyers, Square One Development Group, Inc., Crestline Hotels & Resorts, LLC, Excel Holdings 3 LLC, Premier Reservation Group, LLC, Dan Chudy, Makenzie David Westcott, Matt Titus, Amy D. DeFatte, George L. Reed, and LouAnn Reed, jointly and severally, for an award for compensatory damages in a sum in excess of $16,040, plus an award for attorneys' fees in a sum in excess of $50,000, plus an additional sum in excess of $200,000 for punitive damages against Defendant, Consumer Law Protection, LLC, plus an additional sum in excess of $200,000 for punitive damages against Defendant, Resort Transfer Group, LLC d/b/a Consumer Law Protection Lawyers, plus an additional sum in excess of $200,000 for punitive damages against Defendant, Square One Development Group, Inc., plus a sum in excess of $200,000 for punitive damages against Defendant, Crestline Hotels & Resorts, LLC, plus a sum in excess of $200,000 for punitive damages against Defendant, Excel Holdings 3 LLC, plus an additional sum in excess of $200,000 for punitive damages against Defendant, Premier Reservation Group, LLC, for punitive damages, plus an additional sum in excess of $100,000 for punitive damages against Defendant, Dan Chudy, plus an additional sum in excess of $50,000 for

punitive damages against Defendant, Makenzie David Westcott, plus an additional sum in excess of $50,000 for punitive damages against Defendant, Matt Titus, plus an additional sum in excess of $50,000 for punitive damages against Defendant, Amy D. DeFatte, plus an additional sum in excess of $500,000 for punitive damages against Defendant, George L. Reed, plus an additional sum in excess of $500,000 for punitive damages against Defendant, LouAnn Reed, plus court costs.

### COUNT II
**COMMON LAW FRAUD AGAINST ALL DEFENDANTS**

72.    Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 34 and 36 through 68, as fully set forth above.

73.    Plaintiffs, Ronald and Theresa, reasonably relied on the false representations and in the absence of the concealed facts by Defendants and, as a result, signed the sales documents (Exhibits E through J) and paid Consumer Law $16,040.

74.    At all times relevant, Defendants, collectively, falsely represented that the legislature was in the process of passing legislation that would prevent Plaintiffs from retaining an attorney to cancel their timeshare contracts, that Defendants could arrange for the cancellation of the timeshare contracts, and Consumer Law was accredited by an independent organization, while concealing the fact that Defendants were under injunction that prevented them from engaging in sales activities of this type with respect to another timeshare company, by concealing the fact that filed Wyndham and related Wyndham entities was currently suing Defendants to enjoin them from engaging in sales

activities of the type that were presented on August 5, 2020, and by concealing

the fact that Consumer Law, Square One, George and LouAnn and related

companies had an "F" rating with the BBB and a long history of consumer

complaints about their failure to perform their contracts, their failures to

refund money when due, and by falsely representing that Consumer Law

provided a money-back guarantee with its contract when, in fact, the terms of

the contract, as applied by Consumer Law, George, LouAnn and Square One in

the past, is a guarantee that no money will be refunded.

75.     Plaintiffs, Ronald and Theresa, reasonably relied on the false

representations and reasonably acted in the absence of the concealed

information.  The false representations and the concealments described above

were made intentionally and the information was intentionally concealed from

Plaintiffs, Ronald and Theresa, for the purpose of fraudulently inducing them

to sign the Timeshare Termination Agreement and by falsely inducing Plaintiffs,

Ronald and Theresa, to pay Consumer Law $16,040.

76.     As a direct and proximate result of these false representations and

intentional concealments, Plaintiffs, Ronald and Theresa, were misled to their

damage in the sum of $16,040.

77.     The conduct of Defendants, and each of them, was willful, wanton,

malicious, intentional, in conscious disregard for the rights of others, and

without justification, warranting an award of punitive damages in favor of

Plaintiffs, Ronald and Theresa, and against Defendant, Consumer Law, in a

sum in excess of $200,000, plus a sum in excess of $200,000 for punitive

damages against Defendant, Resort Transfer, plus a sum in excess of $200,000 for punitive damages against Defendant, Square One, plus a sum in excess of $200,000 for punitive damages against Defendant, Crestline, plus a sum in excess of $200,000 for punitive damages against Defendant, Excel, plus a sum in excess of $200,000 for punitive damages against Defendant, Premier Reservation, plus a sum in excess of $100,000 for punitive damages against Defendant, Chudy, plus a sum in excess of $50,000 for punitive damages against Defendant, Westcott, plus a sum in excess of $50,000 for punitive damages against Defendant, Titus, plus a sum in excess of $50,000 for punitive damages against Defendant, DeFatte, plus a sum in excess of $500,000 for punitive damages against Defendant, George, plus a sum in excess of $500,000 for punitive damages against Defendant, LouAnn.

WHEREFORE, under Count II, Plaintiffs, Ronald Kohlmiller and Theresa Kohlmiller, pray for judgment against Defendants, Consumer Law Protection, LLC, Resort Transfer Group, LLC d/b/a Consumer Law Protection Lawyers, Square One Development Group, Inc., Crestline Hotels & Resorts, LLC, Excel Holdings 3 LLC, Premier Reservation Group, LLC, Dan Chudy, Makenzie David Westcott, Matt Titus, Amy D. DeFatte, George L. Reed, and LouAnn Reed, jointly and severally, for an award for compensatory damages in a sum in excess of $16,040, plus an additional sum of $200,000 for punitive damages against plus an additional sum in excess of $200,000 for punitive damages against Defendant, Consumer Law Protection, LLC, plus an additional sum in excess of $200,000 for punitive damages against Defendant, Resort Transfer

Group, LLC d/b/a Consumer Law Protection Lawyers, plus an additional sum

in excess of $200,000 for punitive damages against Defendant, Square One

Development Group, Inc., plus a sum in excess of $200,000 for punitive

damages against Defendant, Crestline Hotels & Resorts, LLC, plus a sum in

excess of $200,000 for punitive damages against Defendant, Excel Holdings 3

LLC, plus an additional sum in excess of $200,000 for punitive damages

against Defendant, Premier Reservation Group, LLC, for punitive damages,

plus an additional sum in excess of $100,000 for punitive damages against

Defendant, Dan Chudy, plus an additional sum in excess of $50,000 for

punitive damages against Defendant, Makenzie David Westcott, plus an

additional sum in excess of $50,000 for punitive damages against Defendant,

Matt Titus, plus an additional sum in excess of $50,000 for punitive damages

against Defendant, Amy D. DeFatte, plus an additional sum in excess of

$500,000 for punitive damages against Defendant, George L. Reed, plus an

additional sum in excess of $500,000 for punitive damages against Defendant,

LouAnn Reed, plus court costs.

/s/ David M. Duree
David M. Duree, ARDC 0697087
David M. Duree & Associates, P.C.
312 South Lincoln Avenue
O'Fallon, IL  62269
618.628.0186 / 618.628.0259
law@dmduree.net
*Attorneys for Plaintiffs Ronald and
Theresa Kohlmiller*

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| DIAMOND RESORTS CORPORATION, a Maryland corporation,<br><br>        Plaintiff,<br><br>v.<br><br>MUTUAL RELEASE CORPORATION a/k/a 417 MRC LLC, a Missouri limited liability company; DAN CHUDY, an individual; MATTHEW TUCKER, an individual; JOSEPH DICKLEMAN, an individual; THERESE BROOKE PIAZZA, an individual; NATHANIEL TYLER, an individual; SHEILA WOOD, an individual; CLS, INC. d/b/a ATLAS VACATION REMEDIES and also d/b/a PRINCIPAL TRANSFER GROUP, a Missouri corporation; DONNELLY SNELLEN, an individual; and JASON LEVI HEMINGWAY, an individual,<br><br>        Defendants. | Case No.: 6:18-cv-03053-MDH |

**STIPULATED FINAL PERMANENT INJUNCTION ORDER**
**AS TO DEFENDANT DANIEL CHUDY**

        This cause having come to be heard upon the Joint Stipulation of Plaintiff, DIAMOND

RESORTS CORPORATION ("Diamond") and Defendant DANIEL CHUDY (collectively, the

"Parties"), pursuant to Federal Rule of Civil Procedure 65(d), for entry of this Stipulated Final

Permanent Injunction Order ("Permanent Injunction"), and the parties having further jointly

stipulated (as detailed below) and incorporate the following stipulations herein:

        1.        DIAMOND RESORTS CORPORATION filed a Sealed Amended Complaint [DE

64] against numerous Defendants in the United States District Court for the Western District of

**EXHIBIT A, Page 1 of 6**

Missouri, styled *Diamond Resorts Corporation, v. Mutual Release Corporation, et. al.,* Case No.: 6:18-cv-03053-MDH  (the "Litigation").

2.      A month prior, the Court entered a Stipulated and Agreed Preliminary Injunction Order [DE 54] ("Preliminary Injunction").

3.      The Parties now stipulate to the entry of this Permanent Injunction to resolve all matters in dispute in this Litigation between them.

4.      Daniel Chudy acknowledges the jurisdiction of this Court for purposes of entering and enforcing this Permanent Injunction, and waives:

   a. Any further procedural steps;

   b. Any requirement that this Permanent Injunction contain any findings of fact or conclusions of law; and

   c. Any right to appeal, seek judicial review or otherwise challenge or contest the validity of this Permanent Injunction.

5.      Daniel Chudy acknowledges and agrees that he enters into this Permanent Injunction knowingly and willfully and with full understanding of its terms, having reviewed them after due consideration with counsel, whom he further acknowledges and agrees has represented him competently in this proceeding.

### **<u>PROHIBITIONS</u>**

Based on the stipulations herein, it is hereby **ORDERED AND ADJUDGED** that Defendant, DANIEL CHUDY, along with his respective business partners, officers, agents, successors, assigns, servants, employees, co-workers, attorneys and those persons acting in active concert or participation with them who receive actual notice of this Permanent Injunction, shall be PERMANENTLY RESTRAINED AND ENJOINED from the following as to DIAMOND

RESORTS CORPORATION, its parents, subsidiaries, affiliates, and/or related entities (collectively, from hereon in, "Diamond"):

a. Contacting, advertising, soliciting or inducing any Diamond timeshare owner (including, without limitation, any owner, member, and/or renters (whether or not members, or those staying at Diamond properties who have not yet purchased a Diamond timeshare interest)) of any timeshare interest, regardless of the form, in (i) any resort listed on the attached **Exhibit "1",** (ii) any resort acquired or developed by Diamond or any of its subsidiaries after the entry of this Permanent Injunction Order, or (iii) any owner of a points-based timeshare ownership program denominated as a Diamond Resorts™ points-based program ("Diamond Timeshare Owners") for cancellation, resale, or transfer of their timeshare contracts, timeshare memberships, and/or timeshare interests, including without limitation, the sale of any points-based timeshare interests in a competing travel club;

b. Contacting and having any communication, written or otherwise, with any Diamond Customer[1] for any purpose related to cancellation, transfer, or rental of their timeshare interest;

c. Providing any Diamond Timeshare Owners with correspondence or draft correspondence to send to Diamond, regulatory agencies, governmental entities, or consumer advocacy group regarding their Diamond timeshare ownership;

d. Telling Diamond Timeshare Owners to stop paying their loans and/or maintenance fees and/or other debts to Diamond;

---

[1] For purposes of this injunction, Diamond Customer shall mean any individual who is a Diamond Timeshare Owner and/or an individual who is a customer, renter or a patron of a Diamond Resorts™ property, especially any of those resorts listed on the attached Exhibit 1.

e.      Soliciting the Diamond Timeshare Owners to breach their timeshare contracts;

f.      Contacting or having any communication, written or otherwise, with any Diamond Employee[2] for any purpose related to obtaining Diamond Customer information, or for any purpose related to timeshare cancellation, transfer, or rental;

g.      Wrongfully obtaining or attempting to obtain Diamond's Confidential, Information[3] and/or trade secrets, and/or otherwise using that Confidential Information or those secrets for any purpose whatsoever;

h.      Transmitting, releasing, disclosing, sharing, distributing or otherwise providing to any other person or entity Diamond's confidential, proprietary information and/or trade secrets including Diamond Customer lists, check-in lists, sales records, or other internal Diamond documents, regardless of where such information was obtained;

---

[2] For purposes of this injunction, Diamond Employee shall mean any employee of Diamond.  This includes any employee of a Diamond Resorts™ property listed on Exhibit 1, or any third party contracted at a Diamond Resorts™ property, the corporate offices or Diamond Resorts™ or any affiliates, and/or related entities that may have access to Diamond Customers' information.

[3] Confidential Information includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, computer software, applications, operating systems, software design, web design, work-in-process, databases, manuals, records, articles, systems, material, sources of material, supplier information, vendor information, financial information, results, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, payroll information, staffing information, personnel information, Team Member lists, supplier lists, vendor lists, developments, reports, internal controls, security procedures, technological innovations, passwords, system configuration, security codes (including but not limited to software and computer programs, in any stage of development), graphics, drawings, sketches, market studies, sales information, revenue, costs, formulae, notes, communications, algorithms, product plans, designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, customer lists, client information, client lists, owner lists, owner information, manufacturing information, distributor lists, and buyer lists, of Diamond or its businesses or any current or future customer, supplier, investor, or other associated third party, or of any other person or entity that has entrusted information to Diamond in confidence.

**EXHIBIT A, Page 4 of 6**

       i.        Representing or implying to Diamond Customers that Defendants have a potential buyer for their Diamond timeshare interests;

       j.        Engaging in any advertising or communication in any form and via any manner whatsoever, that mentions Diamond, its parent, sister, and subsidiary entities;

       k.        Stating, advertising, or implying that Defendants are competent to provide legal services to Diamond Timeshare Owners;

       l.        Referring any Diamond Timeshare Owners to any person or entity for any purpose related to travel club services, cancellation, transfer, rental, or other disposition of their timeshare interest;

       m.        Receiving or paying any fees or compensation with respect to the cancellation or transfer of any Diamond Timeshare Owners' timeshare interest, and/or otherwise referring these matters to any person or entity;

       n.        Soliciting or otherwise encouraging any other person or entity to perform any of the acts prohibited by this Injunction in paragraphs (a)-(m).

## DIAMOND'S CONFIDENTIAL BUSINESS INFORMATION

Within five (5) business days following entry of this Permanent Injunction, Defendant shall return Diamond Customer lists, check-in lists, sales records, or other internal Diamond documents, that may be in the possession, custody or control of any Defendant or any Defendant's agents, successor, assigns, representatives, affiliates, those acting at any Defendant's direction and/or those acting in concert with any Defendant.

## DEFENDANTS' NOTICE REQUIREMENT

Within five (5) business days following entry of this Permanent Injunction, Defendant shall provide a copy of this Permanent Injunction to any of their respective business partners, officers,

agents, successors, assigns, servants, employees, co-workers, attorneys and those persons acting in active concert or participation with them in providing any cancellation, resale, transfer or other exit services related to timeshare interests.

In the event that Defendant is at any time contacted by any Diamond Timeshare Owner regarding cancellation, resale or transfer of their timeshare contracts, memberships, and/or interests, such Defendant shall immediately notify DIAMOND RESORTS CORPORATION and its legal counsel and provide a copy of any correspondence received from such Diamond Timeshare Owner.[4]

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that:

Defendant is notified that any act in violation of any of the terms hereof may be considered and prosecuted as contempt of this Court.

This Court retains jurisdiction for purposes of enforcement and to ensure compliance with this Permanent Injunction Order.  In any proceeding before this Court to enforce this Permanent Injunction, Defendant hereby stipulates and agrees to waive any right to trial by jury.

**IT IS SO ORDERED.**

DATED: May 2, 2019

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

---

[4] Notice to DIAMOND RESORTS CORPORATION and its legal counsel shall be deemed given and effective so long as such written notice is sent via U.S. Mail and email to: Diamond Resorts International, Inc., Attn: Corrine Gaxiola, VP and Associate General Counsel, 10600 West Charleston Boulevard, Las Vegas, Nevada 89135; Corrine.gaxiola@diamondresorts.com; and Alfred J. Bennington, Shutts & Bowen, LLP, 300 South Orange Avenue, Suite 1600, Orlando, Florida 32801; bbennington@shutts.com.



# Know your **Rights**

Join us
**August 5 or 6!**

**RSVP BY**
**August 4, 2020**
*Spaces fill up quickly!*

Join us for a complimentary meal for two where representatives from Consumer Law Protection will explain all of your rights regarding your timeshare ownership. Consumer Law Protection is accredited by the Consumer Rights Council (CRC), an independent advocacy organization dedicated to help timeshare owners who are looking to safely cancel or exit their timeshares or simply learn how to improve their ownership experience.

*We do not buy, list, rent or sell timeshares. There is no obligation to attend this informative event.*

Bring your spouse or deed co-owner.



CONSUMER LAW PROTECTION

**YOU HAVE THREE CHOICES WITH YOUR CURRENT TIMESHARE:**

**X** — Do nothing and keep paying for something you may not be able to use.

**$** — Learn how to optimize your timeshare ownership and maximize your investment.

**EXIT** — Exit gracefully and painlessly from your contract, regardless of your situation.



Receive a
**$250**
SHOPPING CARD
just for attending
in your area.

Call **800-369-0736** by August 4 to secure your reservation today!

*We do not buy, list, rent or sell timeshares. There is no obligation to attend this informative event.*

**EXHIBIT B, Page 1 of 2**





# Know your Rights

## Join us March 3 or 4!

**RSVP BY**
**March 2, 2021**
Spaces fill up quickly!

Join us for a complimentary meal for two where representatives from Consumer Law Protection will explain all of your rights regarding your timeshare ownership. Consumer Law Protection is accredited by the Consumer Rights Council (CRC), an independent advocacy organization dedicated to helping timeshare owners who are looking to safely cancel or exit their timeshares or simply learn how to improve their ownership experience.

*There is no obligation to attend this informative event.*

*Bring your spouse or deed co-owner.*

---

## YOU HAVE THREE CHOICES WITH YOUR CURRENT TIMESHARE:

**X**    Do nothing and keep paying for something you may not be able to use.

**$**    Learn how to optimize your timeshare ownership and maximize your investment.

**EXIT**    Exit gracefully and painlessly from your contract, regardless of your situation.



Receive a **$250** SHOPPING CARD just for attending in your area.

**EXHIBIT C, Page 1 of 2**



Premier Reservations Group
8600 Daniel Dunklin Blvd
Pevely, MO 63070-1502

Presorted STD
U.S. Postage
PAID
Permit No. 303
San Diego, CA

***********AUTO**5-DIGIT 62009
EUGENE SMITH
7501 STONEBRIDGE DR
MARYVILLE IL  62062-6440

*Handwritten:* 4 PT  MARCH 4  3PM

2PM135

1-17-1



**EXHIBIT C, Page 2 of 2**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

|  |  |
|---|---|
| WYNDHAM VACATION OWNERSHIP, INC. a Delaware corporation; WYNDHAM VACATION RESORTS, INC., a Delaware corporation; WYNDHAM RESORT DEVELOPMENT CORPORATION, an Oregon Corporation; SHELL VACATIONS, LLC, an Arizona limited liability company; SVC-WEST, LLC, a California limited liability company; SVC-AMERICANA, LLC, an Arizona limited liability company; and SVC-HAWAII, LLC, a Hawaii limited liability company, | CASE NO.: 6:20-cv-00643-RBD-EJK |

      Plaintiffs,

v.

SQUARE ONE DEVELOPMENT GROUP, INC., d/b/a SQUARE ONE GROUP, a Missouri corporation; SQUARE ONE HOLDING GROUP, INC., a Colorado corporation; CONSUMER LAW PROTECTION, LLC, a Missouri limited liability company; CONSUMER RIGHTS COUNCIL, INC., a Missouri not-for-profit corporation; RESORT TRANSFER GROUP, LLC, d/b/a CONSUMER LAW PROTECTION LAWYERS, a Missouri limited liability company; PREMIER RESERVATIONS GROUP, LLC, a Missouri limited liability company;

**EXHIBIT D, Page 1 of 5**

GEORGE L. REED, an individual;
and LOUANN REED, an individual,

    Defendants.

## THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Wyndham Vacation Ownership, Inc. ("WVO"); Wyndham Vacation Resorts, Inc. ("WVR"); Wyndham Resort Development Corporation ("WRDC"); Shell Vacations, LLC ("SV"); SVC-West, LLC ("SVC-West"); SVC-Americana, LLC ("SVC-Americana"); and SVC-Hawaii, LLC ("SVC-Hawaii") (collectively, "Plaintiffs" or "Wyndham"), hereby sue Defendants, Square One Development Group, Inc., d/b/a Square One Group ("Square One"), Square One Holding Group, Inc. ("SOHG"), Consumer Law Protection, LLC ("CLP"), Resort Transfer Group, LLC d/b/a Consumer Law Protection Lawyers ("CLP Lawyers"), Consumer Rights Council, Inc. ("CRC"), Premier Reservations Group, LLC ("PRG") George Reed, and LouAnn Reed (Square One, SOHG, CLP, CLP Lawyers, CRC, PRG, George Reed, and LouAnn Reed, collectively, the "Defendants") and state:

## INTRODUCTION

1.    This is an action against a network of interrelated entities—Square One, SOHG, CLP, CLP Lawyers, CRC, and PRG—that exist for the sole purpose of scamming timeshare owners and timeshare developers for

**EXHIBIT D, Page 2 of 5**

their own profit, together with common principals—George and LouAnn Reed—that act as the masterminds behind the curtain of the entire operation.   Except Square One and SOHG, every one of the other entity Defendants was formed *after* this lawsuit was filed, and operations appear to have shifted to these new entities to avoid the jurisdiction of this Court and the injunction sought in this case.

2.    Defendants' business is a scam against Wyndham and Wyndham's timeshare owners (the "Wyndham Owners").  Defendants engage in a series of lies and misrepresentations to Wyndham Owners designed to create dissatisfaction with their Wyndham timeshare and a sense of urgency with regard to the need to end their timeshare ownership.  Defendants then offer Wyndham Owners the seemingly perfect solution—a one-time, upfront fee for a process that will legally and permanently end their timeshare ownership, including cancellation of any indebtedness associated with that timeshare.

3.    But, unfortunately for Wyndham Owners, the advertised "process" does not exist.  For Wyndham Owners with mortgages, Defendants instruct and/or induce Wyndham Owners to cease making payments on their timeshare interests, which results in foreclosure or termination of the timeshare interest and often times negative credit reporting.  Once the debt obligation is enforced, Defendants represent that their "process" has worked.

3

**EXHIBIT D, Page 3 of 5**

Moreover, the Defendants contrive to convince timeshare owners to cease making their contractually required payments to the timeshare developers in furtherance of their scheme.

4.      For Wyndham Owners without mortgages, Defendants first hide or misrepresent the existence of Wyndham's own Certified Exit – backed by Wyndham™ program (formerly known as the "Ovation" program) (hereafter "Certified Exit"), which is a free option to Wyndham Owners to relinquish ownership back to Wyndham.  Once the Certified Exit program is hidden, Defendants then impersonate Wyndham Owners and themselves attempt to use the Certified Exit program to accomplish the advertised exit.

5.      The result of the Defendants' nefarious conduct is a detrimental wake of financial consequences to everyone except for the Defendants themselves.  Depending on the circumstances, Wyndham Owners experience financial repercussions ranging from foreclosure to negative credit reporting, all the while unnecessarily paying tens of thousands of dollars for Defendants' purported "services."  In turn, timeshare developers, like Wyndham, are harmed and experience defaulted loan balances and loss of good will associated with the particular identifiable Wyndham Owners that are exposed to the Defendants' advertisements.

6.      This lawsuit seeks to redress the damage and harm that Defendants have caused to Wyndham, and to also enjoin Defendants from

4

**EXHIBIT D, Page 4 of 5**

their false and fraudulent conduct. Indeed, despite being embroiled in litigation on several fronts, Defendants remain undeterred in furtherance of their scheme. The ongoing nature of the misconduct and the deceit behind this scam can be easily gleaned from the corporate entity games that George and LouAnn Reed continue to play, as further detailed herein.

## PARTIES, JURISDICTION, AND VENUE

### Plaintiffs

7.    Plaintiff Wyndham Vacation Ownership, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

8.    Plaintiff Wyndham Vacation Resorts, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

9.    Plaintiff Wyndham Resort Development Corporation is a corporation organized and existing under the laws of the State of Oregon with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

**EXHIBIT D, Page 5 of 5**



**CONSUMER LAW PROTECTION**

8600 Daniel Dunklin Blvd.
Pevely, MO 63070
(314) 686-4630

## TIMESHARE TERMINATION AGREEMENT

Owner(s):      Ronald D. Kohlmiller

Theresa M. Kohlmiller

This Timeshare Termination Agreement is entered into on the date below between Consumer Law Protection (hereafter, "Consumer Law") and the above Owner(s) (hereinafter "Owner" or "You"). Owner and Consumer Law agree that this Timeshare Termination Agreement, along with the "Timeshare Worksheet" and "Payment Authorization" " together constitute the entire Timeshare Termination Agreement (hereinafter, "Agreement").

This Agreement covers _____ Worldmark Resort _____ resort timeshare interest(s) (Hereinafter referred to as the "Timeshare Interest") further described on the Timeshare Worksheet(s) attached. Owner shall pay to Consumer Law the total sum of _____ $   16,040.00   US Dollars ("Service Fee") in exchange for Consumer Law completing the Timeshare Interest termination process, which will permanently and completely eliminate the Owner's Timeshare interest and/or resort obligation, whether by negotiated release, settlement, or other lawful avenues that Consumer Law believes may be beneficial to eliminating Owner's Timeshare Interest, but not adverse to Owner's best interests ("the Service"). Owner understands that during the performance of this Agreement, the Timeshare Interest will remain in the Owner's name. Consumer Law agrees to perform the Service contemplated within this Agreement, and may hire and pay third parties, (including licensed title companies, professional property closing firms, and/or referring matters to attorneys) , as may be required to prepare and transmit to the Owner all necessary documentation and/or take all necessary and appropriate steps to eliminate the Owner's Timeshare interest pursuant to this Agreement.

**MONEY BACK GUARANTEE ("GUARANTEE")**
**Consumer Law guarantees our Service—we will get You out of Your timeshare or we will give You a complete and full refund.** The full refund amount will be the total amount paid by You to Consumer Law without set offs or deductions for any expenses incurred in the process of attempting to eliminate said Timeshare Interest. We stand behind our 100% money back guarantee based on, and subject to, the following required criteria:

1. It has been no less than 24-months since Consumer Law received all necessary documentation from You to begin Your Timeshare Termination process;

2. Consumer Law did not provide You with a full Timeshare Interest termination opportunity; and

3. All other terms of Consumer Law's 100% money back guarantee are met as detailed below:

a. Consumer Law guarantees that if Owner does not obtain the Service from Consumer Law within a reasonable amount of time, or if the Owner is not in active litigation (which shall likely not be less than 24 months), then Consumer Law shall refund the full Service Fee amount.

b. Consumer Law's obligations are met in full when Consumer Law obtains a Timeshare Termination Agreement, or similarly relevant documentation effecting the same, from Owner's resort, and presents such to Owner.

c. This Guarantee is also contingent upon the representation by Owner (and ongoing expectation by Consumer Law) that all information provided to Consumer Law by Owner is true, accurate, timely (within 30 days of requests) and complete, and provides full cooperation with requests for information from Consumer Law, an agent title company, Owner's legal representative (as may be appropriate), or the Resort.

d. This Guarantee is void and unenforceable if Owner fails to fulfill Owner's duties required by this Agreement, including but not limited to Owner stopping or delaying the timeshare termination process, refuses to sign a procured timeshare termination offer.

e. This Guarantee is void and unenforceable if Owner fails to disclose to Consumer Law a mortgage or other lien encumbrance on Owner's Timeshare.

f. This Guarantee is void and unenforceable if Owner has indicated to Consumer Law, whether personally or through counsel, an intent to rescind or otherwise fail to comply with Owner's necessary obligations to participate in the Service process.

**EXHIBIT E, Page 1 of 3**

**OWNER'S REQUIRED DOCUMENTS**

4.  Within 30 days from date of this Agreement Consumer Law and/or its agents or affiliates will send a Welcome Packet, requesting necessary information and copies of documentation including but not limited to; Maintenance Fee Bill, Deed, Ownership Certificates, Membership Agreements and/or Lease. In addition, Owner may need to execute a Limited Power of Attorney as requested by Consumer Law's legal representative or affiliate or agents (Owner is responsible for any Notary fees if incurred).

5.  Owner hereby acknowledges that time is of the essence and agrees to comply in a timely manner with requests for documentation and phone calls from Consumer Law and its agents or affiliates. "Timely" manner is hereby defined as being as soon as possible but, not later than 30 days, after requests from Consumer Law.

6.  Owner understands that if the Timeshare is owned by a legal trust or if there is a death, divorce, or legal separation of any of the legal Owners, that such must be communicated to Consumer Law or its agents within the 30-day, Timely, period.

7.  Owner hereby agrees to execute and return all requested documents within thirty (30) days of receipt of requests from Consumer Law or its agents.

**USAGE**

8.  Owner understands that, as may be relevant for their particular Timeshare Interest, the most current use year and / or points MUST BE AVAILABLE in order for Consumer Law to transfer the Timeshare Interest. Owner agrees to keep the most current use year, and / or points available for transfer during the entire termination process. If the current year use week or points are NOT available and used, banked, or reserved in any way, the Owner may be responsible for additional fees incurred by Consumer Law or its affiliates.

9.  Owner understands they may lose all banked weeks, points etc. exchange company reservations and the use of their home resort upon completion of the transfer.

**ADDITIONAL TERMS AND CONDITIONS**

10. Owner hereby attests they are the legal Owner of the property represented by this Agreement. If not the legal owner, they hereby have the authority of the Owner to execute this Agreement on behalf of such Owner.

**11. This is a legally binding contract and does NOT have a cancellation period. By Initialing here and signing below client acknowledges  understanding of this statement.** (X) _____  (X) _____

12. Owner confirms the title to the Timeshare Interest is "free and clear." This means the Timeshare is free from any liens or encumbrances or claims and has no past due obligations of any type.

13. Owner hereby agrees and understands that any attempts by the Owner to communicate with the resort or their affiliates could disrupt the Termination process and cause extensive delays. Owner agrees to forward all correspondence with the resort via mail, phone, or email to Consumer Law or its affiliates within 10 days of receipt.

14. Owner understands that each Timeshare Interest has unique circumstances and obligations, all of which will determine the actual length of time for completion of the Termination process. While many Terminations are complete within three (3) to six (6) months, some may take as long as 24 months.

15. Owner understands that Consumer Law may use a professional title company and legal service from licensed attorneys. Similarly, Consumer Law makes no representations, and does not and cannot advise Owner regarding, tax matters or the implications of Your Timeshare or estate Interest.

16. Owner agrees to hold harmless Consumer Law and its affiliates to any claims associated with Owner's Timeshare interest if any of the Owner representations to Consumer Law are untrue or Owner fails to comply with any of the terms of this Agreement. Owner understands any breach of performance on the part of the Owner during the Termination process may make the Owner subject to additional fees and expenses incurred by Consumer Law.

(17) Other special terms and conditions: _____

18. Owner(s) hereby acknowledge they have received a copy of all documents which in total, comprise this entire Agreement. Owner acknowledges they have been provided an appropriate length of time and opportunity to carefully review this Agreement before signing. Owners acknowledge that they are not entering into this Agreement based upon on any legal or tax advice received from Consumer Law.

19. The terms of this Agreement shall be governed by, and construed in accordance with, the laws of the state of Missouri with venue and forum residing in the circuit courts of Jefferson County, Missouri. In the event legal proceedings are initiated to enforce the terms of this Agreement, the prevailing party shall be entitled to recover from the losing party or parties its litigation expenses, costs and reasonable attorneys' fees at trial and on appeal, as may be applicable.

**EXHIBIT E, Page 2 of 3**

20. This Agreement shall be binding upon execution to the benefit all parties and their respective heirs, administrators, executors, successors and assigns.  Consumer Law and Owner each represent that they have the authority to enter into this Agreement. This Agreement may not be altered, amended or modified except by a written document signed by both Parties,  Each of the undersigned parties will sign any and all documents, and do any and all things necessary, to effectuate the Service contemplated under this Agreement.

21. Each party agrees that if any provision or portion of any provision of this Agreement is held to be invalid or unenforceable or to be contrary to public policy or any law, for any reason, all remaining provisions are severable and should remain in force to the greatest possible degree.

22. This Agreement represents the entire Agreement and there are no other verbal or implied obligations contained in this Agreement.

23. Your timeshare Expert is not an attorney, and can not disperse legal advice; however legal advice will be given by the attorney assigned to your file after you have received your letter of engagement.

**I/WE HEREBY ACKNOWLEDGE THAT WE HAVE READ, UNDERSTAND AND AGREE TO ALL COMPONENTS OF THIS AGREEMENT AND THE ATTACHED DOCUMENTS.**

X _____ 8/5/2020          X _____ 8/5/2020
Ronald D. Kohlmiller          **Date**                     Theresa M. Kohlmiller          **Date**

_____                      8/5/2020
**Signature on behalf of;**                          **Date**
**Consumer Law Protection**

**EXHIBIT E, Page 3 of 3**



**CONSUMER LAW PROTECTION**

### TRANSFER HOLD

This form serves as an Amendment to the "Timeshare Termination Agreement."

This form is a Transfer Hold Agreement and is used if you are choosing to continue using your points or weeks in the next 12 months. By signing this form, you are choosing to not start the legal process of transferring your timeshare out of your name. Your timeshare ownership is not eligible to transfer until there is usage available. Consumer Law Protection reserves the right to place your timeshare ownership on a Transfer Hold if your timeshare fees (taxes, assessments, insurances and/or maintenance fees) are not current with your resort indicated on the Timeshare Termination Agreement.

I/We understand that while my timeshare ownership is on Transfer Hold, the guarantee to transfer your ownership/timeshare does not begin until the Transfer Hold is removed, and all documents required are received by Consumer Law Protection. If you choose to remove your Transfer Hold please contact Consumer Law Protection at (314) 686-4630.

As of _8-5-2020_ I/We _Ronald + Theresa Kohlmiller_ request that
     (Date)                  (All Owners)
Consumer Law Protection place a Transfer Hold on _World mark Resort_
                                                  (Resort Name)

until _1/1/2021_.
     (Date)

I/We understand that we are responsible to pay all resort fees (taxes, assessments, insurances and/or Maintenance fees) until we longer are legal owners of the timeshare.

_Ronald Kohlmiller_               _8-5-2020_
Owner                          Date
_Theresa Kohlmiller_          _8-5-2020_
Owner                          Date

**EXHIBIT F, Page 1 of 1**



**CONSUMER LAW PROTECTION**

8600 Daniel Dunklin Blvd.
Pevely, MO 63070
(314) 686-4630

## *T E R M I N A T I O N    A G R E E M E N T*

### OWNER  INFORMATION

| | Name(s) | | Date of Birth |
|---|---|---|---|
| Owner 1 | Ronald D. Kohlmiller | | |
| Owner 2 | Theresa M. Kohlmiller | | |

| | Address | City | ST | Zip |
|---|---|---|---|---|
| **Home:** | 7407 Leslie Dr. | Edwardsville | IL | 62025 |
| **Mailing:** | SAME¹ | | | |

| Home Phone | Mobile Phone 1 | Mobile Phone 2 | Other Phone |
|---|---|---|---|
| | | | N/A |

| Email Address 1 | Email Address 2 |
|---|---|
| tkohlmiller@yahoo.com | n/a |

### TERMINATION  AGREEMENT AMOUNT & PROGRAMS

| Worldmark Resort | $3,516 |
|---|---|
| **Name of Resorts/Timeshares** | **Annual Maint. Fees** |

| | | |
|---|---|---|
| Liquidation Cost: | $ | 61,561.00 |
| Transfer Fees: | $ | 1,500.00 |
| Processing Fee: | $ | 449.00 |
| *Agreement Sub Total:* | $ | 63,510.00 |
| Trade Equity: | $ | 42,620.00 |
| Maintenance Fee Credit: | $ | 4,850.00 |
| *Agreement Sub Total:* | $ | 16,040.00 |
| Total $ Received Today: | $ | 16,040.00 |
| Balance Due: | $ | - |

| Today's Payment Amount(s): | | |
|---|---|---|
| Chk # _____ | | |
| Visa / MC | $ | 8,020.00 |
| Discover | | |
| AMEX | | |
| Other _Visa | $ | 8,020.00 |
| Other _____ | $ | - |
| **TOTAL Paid Today:** | $ | 16,040.00 |

### PAYMENT  AUTHORIZATIONS

| Signatures: Owner (s): | *Ronald D. Kohlmiller* | 8/5/2020 | *Theresa Kohlmiller* |
|---|---|---|---|
| | Ronald D. Kohlmiller | Date | Theresa M. Kohlmiller |

| Signatures: Consultant: | | Director: | |
|---|---|---|---|
| | Makenzi Westcott | | Dan Chudy |

Other NOTES: _____

Q A O : | Jimmy Reed

**EXHIBIT G, Page 1 of 1**

# Timeshare Worksheet

*Information show below should accurately reflect the details of the Deed/Membership*

## Owner Details

**Name(s) 1st:** Ronald D. Kohlmiller    **2nd:** Theresa M. Kohlmiller

**Address:** 7407 Leslie Dr.    Edwardsville   IL   62025

**Primary Email:**    **Secondary Email:** n/a

**Primary Phone:**    **Secondary Phone:**    **Other Phone:**

**Welcome Packet Preference:** ☒ E-Mail (must have printer)  Mail (USPS)   ☒ Mail (USPS)   ☐ Text OK?

## Resort Ownership Details

**Name of Resort:** Worldmark Resort

**Unit or Mbr # or other info.:**

**Address:** 3894 Full Creek

**City:** Branson   **State:** MO   **Zip Code:** 65616   **Country:** USA

**Type of Ownership:**    **Week #:**

**Annual Maintenance Fees Amount:** $3,516   **Pay Frequency:**    **Next Due Date:**

| Resort Usage Information | NO | YES | Notes if needed: |
|---|---|---|---|
| Have you paid all 2019 & prior maintenance fees / taxes? | | ✓ | |
| Are you paid current on 2020 maintenance fees / taxes? | | ✓ | |
| Have you used, or deposited the 2019 weeks/ points? | | ✓ | |
| Have you used, or deposited the 2020 weeks/ points? | | ✓ | |
| *If "NO" - Do Not Use* | | | |
| Any pending reservation booked, banked, or exchanged for this property? | | ✓ | |

| Ownership Information | NO | YES | Additional documents as required |
|---|---|---|---|
| Is there a deceased spouse on title? | ✓ | | IF YES: Death certificate required |
| Is the timeshare paid off? | | ✓ | IF NO: Mortgage information needed |
| Are all owners on title present? | | ✓ | IF NO: See event representative |
| Is the title held in a family trust? | ✓ | ✓ | IF YES: First page, powers page  signature page of trust document |

| Additional Notes: | |
|---|---|

Owner(s) warrant(s) that all information concerning ownership of the Property listed above on this Timeshare Worksheet is complete, accurate and true.

Consumer Law Protection, LLC. (Consumer Law Protection) is an independent transfer company that contracts to transfer weeks or points from various resorts around the world. Consumer Law Protection may also contract with various third party title transfer companies, closing companies and attorneys to liquidate your ownership. Consumer Law Protection is not affiliated with your resort.

This document allows Consumer Law Protection and/or Consumer Law Protection's assigns the exclusive right to transfer the property out of Owner(s) name(s) by any legal means necessary. Owner guarantees that they do not currently have the property listed with any broker for sale. This property shall be granted, conveyed or assigned by Consumer Law Protection and/or Consumer Law Protection's assigns in such a manner as to pass legal title to the Grantee or Assionee.

## I/WE ACKNOWLEDGE THAT WE HAVE READ, UNDERSTAND AND AGREE TO THIS AGREEMENT AND ALL ASSOCIATED CONTRACT DOCUMENTS LISTED

✗ *Ronald D Kohlmiller*   8/5/2020     ✗ *Theresa Kohlmiller*   8/5/2020

**Owner Signature**    **Date**      **Owner Signature**    **Date**

**Printed Names :** Ronald D. Kohlmiller      Theresa M. Kohlmiller



**RCI®**

CONSUMER LAW PROTECTION

**Prepared for:** Ron Kohlmiller
Teresa Kohlmiller

## Option 1
### CURRENT CONTRACT

**Resort:** Worldmark Resort
Maintenance Fees Inflation
**Tied to Owner's Estate**
Probate Liability
Deeded Property
External Exchange
Travel Demand Index
No Exit Strategy
House Bill 453 & 7025

**Annual Maintenance Fee**       $3,516
Maintenance Fee Inflation: $ 161,738.85
**Mortgage:** $

**Total Cost of Ownership:** $ 161,738.85

## Option 2
### EQUITY TRADE

RCI Platinum membership
NO Maintenance Fees
**NOT** Tied to Owner's Estate
Mortgage Relief
24 month Booking window
Unlimited Annual travel
Cruise, Airfare, Car rentals, and Hotels
Points carry over for 4 years
Equity Trade-In Value
Walk-a-Way Clause

140,000

## Option 3
### TERMINATION AGREEMENT

✷ Deed Liquidation - Exit
⚜ NO Maintenance Fees
℘ **NOT** Tied to Owner's Estate
☌ Liability Protection
⚘ Mortgage Relief
⚶ HB 453 Release
⚵ HB 7025 Release

Liquidation Cost:  $ 61,561.00
Transfer Fees:     $  1,500.00
Processing Fee:    $    499.00
Gross Liquidation Price:  $ 63,560.00
**LESS:** Liquidation Equity: $ 42,670.00
Maintenance Fee Credit:
**NET Termination Agrmnt:** $ 20,890.00

State: _____   City: _____
(Final Notice)
The foregoing document was acknowledged.
before me _____ Day of _____
INITIAL ONE: ACCEPT _____ DECLINE _____

**EXHIBIT I, Page 1 of 1**



**CONSUMER LAW PROTECTION**

8600 Daniel Dunklin Blvd.
Pevely, MO 63070
(314) 686-4630

## Attorney Referral Form 1

Date: _____ August 5, 2020

Name(s): _____ Ronald D. Kohlmiller _____ and _____ Theresa M. Kohlmiller

Address: _____ 7407 Leslie Dr. _____ Edwardsville ___ IL ___ 62025

Home Phone: _____ Mobile Phone: _____ Email Address #1: _____ **Email Address #2:**
n/a

Resort Name: ____ Worldmark Resort

BY COMPLETING THIS FORM, I ("Client") AM REQUESTING A REFERRAL TO LEGAL COUNSEL ("Attorney" or "The Firm") FOR LEGAL EVALUATION AND POTENTIAL REPRESENTATION REGARDING A DISPUTE I HAVE WITH A TIMESHARE COMPANY OR RESORT.

**Instructions regarding third-party agents/experts:** Client acknowledges that third-party agents of Consumer Law Protection, Inc. have relevant expertise in the field of timeshare relief ("Agents"), and Client hereby authorizes Attorney and/or Firm to communicate with such Agents, and to share all information about Client's case with Consumer Law Protection, and that such disclosure shall not constitute a waiver of any attorney-client or work product privilege, to the maximum extent permitted by applicable state law.

A limited scope attorney engagement letter will be provided to you by Attorney and/or Firm once this signed referral form is received by Consumer Law Protection. This attorney engagement letter will explain such attorney-client relationship in detail. Each Client's circumstance is factually unique, and this authorization serves to permit Consumer Law Protection to forward Client's file to licensed legal counsel.

**ACKOWLEDGEMENT BY CLIENT(S):**

Signature: _X_ Ronald Kohlmiller _____ _X_ Theresa Kohlmiller

Names: _____ Ronald D. Kohlmiller _____ and _____ Theresa M. Kohlmiller

Dated: _____ 8/5/2020

**EXHIBIT J, Page 1 of 1**

<u>Get Accredited</u>                    <u>Business and Charity Login</u>                    <u>Contact</u>

 <u>My BBB</u>

# Better Business Bureau®

 

<u>Share</u>   <u>Print</u>    <u>Home</u> > <u>Missouri</u> > <u>Pevely</u> > <u>Timeshare Cancellation</u> > Consumer Law Protection

**« Business Profile**

Business Profile

# Consumer Law Protection

📍 8600 Daniel Dunklin Blvd
Pevely, MO 63070

🌐 <u>https://www.consumer lawprotection.com/</u>

📞 (314) 686-4630

## ⚠ CURRENT ALERTS FOR THIS BUSINESS

**Pattern of Complaint:**
Better Business Bureau is advising consumers to use caution when considering doing business with Consumer Law Protection.  BBB has received a pattern of consumer complaints alleging failure to honor a contract or agreement, failure to cancel contracts, failure to contact consumers, misleading sales presentation and poor customer ...
<u>Read More</u>

## ADDITIONAL BUSINESS INFORMATION

**Additional Information:**
Consumer Law Protection is affiliated with Square One Development Group, Inc on which BBB maintains a separate Business Profile.  To view this report, click the following link:

<u>http://www.bbb.org/us/mo/des-peres/profile/timeshare-cancellation/square-one-development-group-inc-0734-1000010028</u>

**Advertising Review:**
In September 2020, Better Business Bureau challenged Consumer Law Protection's website, www.consumerlawprotection.com, which stated:

- "RECOMMENDED MERCHANT BY VOCAL REFERENCES"
- "Proven Success"
- "In serving clients, our attorneys..."

**EXHIBIT K, Page 1 of 12**

3/24/2021                    Consumer Law Protection | Better Business Bureau® Profile

- "Credit Repair"
-

According to BBB *Code of Advertising*, &ldq...
Read More

See all additional business information

## Contact Information

📍 8600 Daniel Dunklin Blvd
Pevely, MO 63070

🌐 https://www.consumerlawprotection.com/

📞 (314) 686-4630

## BBB Rating & Accreditation

F

THIS BUSINESS IS NOT BBB ACCREDITED

**Customer Reviews are not used in the calculation of BBB Rating**
Reasons for BBB Rating

## Customer Reviews

★ ☆ ☆ ☆ ☆  **1/5**

Average of 2 Customer Reviews



| Read reviews | Start a Review |

## Customer Complaints

**36** complaints closed in last 3 years
**36** complaints closed in last 12 months

**EXHIBIT K, Page 2 of 12**

Consumer Law Protection | Better Business Bureau® Profile

**Read complaints**                    File a Complaint

## Industry Tip

BBB Tip: Timeshares

**Read More**

## Customer Complaints

36 Customer Complaints

## Customer Reviews

2 Customer Reviews

## Business Details

**Location of This Business**
8600 Daniel Dunklin Blvd, Pevely, MO 63070

**BBB File Opened:** 6/9/2020

**Business Management**
George Reed, Owner

**Contact Information**
Principal
George Reed, Owner
Customer Contact
George Reed, Owner

**Additional Contact Information**
Phone Numbers

(800) 217-3015

**EXHIBIT K, Page 3 of 12**

## Business Categories

Timeshare Cancellation     Timeshare Companies

## Local BBB

BBB of Eastern & Southwest Missouri & Southern Illinois

More Info on Local BBB

BBB Business Profiles may not be reproduced for sales or promotional purposes.

BBB Business Profiles are provided solely to assist you in exercising your own best judgment. BBB asks third parties who publish complaints, reviews and/or responses on this website to affirm that the information provided is accurate. However, BBB does not verify the accuracy of information provided by third parties, and does not guarantee the accuracy of any information in Business Profiles.

When considering complaint information, please take into account the company's size and volume of transactions, and understand that the nature of complaints and a firm's responses to them are often more important than the number of complaints.

BBB Business Profiles generally cover a three-year reporting period. BBB Business Profiles are subject to change at any time. If you choose to do business with this business, please let the business know that you contacted BBB for a BBB Business Profile.

As a matter of policy, BBB does not endorse any product, service or business.

## BBB Reports On

BBB reports on known marketplace practices.

See What BBB Reports On

© 2021, International Association of Better Business Bureaus, Inc., separately incorporated Better Business Bureau organizations in the US, Canada and Mexico and BBB Institute for Marketplace Trust, Inc. All rights reserved. ™ Canada, trademark(s) of the International Association of Better Business Bureaus, used under license.

**EXHIBIT K, Page 4 of 12**

3/24/2021                     Square One Development Group, Inc. | Better Business Bureau® Profile

<u>Get Accredited</u>                    <u>Business and Charity Login</u>                    <u>Contact</u>

 <u>My BBB</u>

# Better Business Bureau®

<u>Home</u> > <u>Missouri</u> > <u>Des Peres</u> > <u>Timeshare Cancellation</u> > Square One Development Group, Inc.

 <u>Share</u>     <u>Print</u>

**« Business Profile**

## Business Profile

# Square One Development Group, Inc.

📍 1610 Des Peres Rd Ste 150
Des Peres, MO 63131-1863

🌐 <u>https://squareonehelp.com/</u>

✉ <u>Email this Business</u>

📞 (314) 686-4618

### ⚠ CURRENT ALERTS FOR THIS BUSINESS

**Pattern of Complaint:**
Better Business Bureau is advising consumers to use caution when considering doing business with Square One Development Group, Inc.  BBB has received a pattern of consumer complaints alleging failure to honor a contract or agreement, failure to cancel contracts, failure to contact consumers, misleading sales presentation and poo...
<u>Read More</u>

### ADDITIONAL BUSINESS INFORMATION

**Additional Information:**
Square One Development Group has been in business since 2005, however, the company began promoting its Timeshare Exit services in 2018.

The company also is affiliated with Consumer Rights Council, Consumer Law Protection, and VOI Consulting Group.  BBB maintains separate Business Profiles on these companies.  Please see links below:
&...

**EXHIBIT K, Page 5 of 12**

3/24/2021                     Square One Development Group, Inc. | Better Business Bureau® Profile

Read More

**Advertising Review:**

In July 2020, Better Business Bureau challenged Square One Development Group, Inc.'s website, www.squareonehelp.com, which stated the following:

"The Nation's Most Effective Timeshare Exit Strategists"
"The nation's leading Consumer Protection Group"
"7000+ Contracts successfully exited via our proprietar...

Read More

See all additional business information

## Contact Information

📍 1610 Des Peres Rd Ste 150
    Des Peres, MO 63131-1863

🌐 https://squareonehelp.com/

✉️ Email this Business

📞 (314) 686-4618

## BBB Rating & Accreditation

THIS BUSINESS IS NOT BBB ACCREDITED

**Years in Business:** 16

**Customer Reviews are not used in the calculation of BBB Rating**
Reasons for BBB Rating

## Customer Reviews

 **3.24**/5

Average of 21 Customer Reviews

**EXHIBIT K, Page 6 of 12**

**Read reviews**                    Start a Review

## Customer Complaints

**84** complaints closed in last 3 years

**62** complaints closed in last 12 months

**Read complaints**                    File a Complaint

## Industry Tip

BBB Tip: Timeshares

**Read More**

## Customer Complaints

84 Customer Complaints

## Customer Reviews

21 Customer Reviews

## Business Details

**Location of This Business**

1610 Des Peres Rd Ste 150, Des Peres, MO 63131-1863

✉ Email this Business

**BBB File Opened:**        10/8/2018

**Years in Business:**       16

**EXHIBIT K, Page 7 of 12**

**Business Started:**      3/15/2005
**Business Incorporated:** 3/15/2005
**Type of Entity:**        Corporation

**Alternate Business Name**
Square One Holding Group, Inc.

**Business Management**
Mrs. LouAnn Reed, Owner

**Contact Information**
Principal
Mrs. LouAnn Reed, Owner
Customer Contact
Mrs. LouAnn Reed, Owner

**Additional Contact Information**
Phone Numbers
(800) 414-0563   Other Phone

Email Addresses
✉ Email this Business

# Business Categories

Timeshare Cancellation    Property Management    Real Estate Investing

# Local BBB

BBB of Eastern & Southwest Missouri & Southern Illinois

More Info on Local BBB

BBB Business Profiles may not be reproduced for sales or promotional purposes.

BBB Business Profiles are provided solely to assist you in exercising your own best judgment. BBB asks third parties who publish complaints, reviews and/or responses on this website to affirm that the information provided is accurate. However, BBB does not verify the accuracy of information provided by third parties, and does not guarantee the accuracy of any information in Business Profiles.

When considering complaint information, please take into account the company's size and volume of transactions, and understand that the nature of complaints and a firm's responses to them are often more important than the number of complaints.

BBB Business Profiles generally cover a three-year reporting period. BBB Business Profiles are subject to change at any time. If you choose to do business with this business, please let the business know that you contacted BBB for a BBB

**EXHIBIT K, Page 8 of 12**

Get Accredited                          Business and Charity Login                                    Contact

📍 My BBB

Home > Missouri > Pevely > Timeshare Cancellation > Consumer Law Protection > Overview of BBB Ra

« **Overview of BBB Ratings**

## Overview of BBB Ratings

# Consumer Law Protection

# Better Business Bureau®

📍 8600 Daniel Dunklin
Blvd
Pevely, MO 63070

🌐 https://www.consumerla
wprotection.com/

📞 (314) 686-4630

## Reasons for Rating

**Consumer Law Protection**

- Failure to respond to 21 complaint(s) filed against business

- Business has failed to resolve underlying cause(s) of a pattern of complaints

- 7 complaint(s) filed against business that were not resolved

- Length of time business has been operating

- Advertising issues found by BBB

## About BBB Ratings

BBB ratings represent the BBB's opinion of how the business is likely to interact with its customers. The BBB rating is based on information BBB is able to obtain about the business, including complaints received from the public. BBB seeks and uses information directly from businesses and from public data sources

BBB assigns ratings from A+ (highest) to F (lowest). In some cases, BBB will not rate the business (indicated by an NR, or "No Rating") for reasons that include insufficient information about a business or ongoing review/update of the business's file

BBB Business Profiles generally explain the most significant factors that raise or lower a business's rating

**EXHIBIT K, Page 9 of 12**

BBB ratings are not a guarantee of a business's reliability or performance. BBB recommends that consumers consider a business's BBB rating in addition to all other available information about the business

BBB Business Profiles may not be reproduced for sales or promotional purposes.

BBB Business Profiles are provided solely to assist you in exercising your own best judgment. BBB asks third parties who publish complaints, reviews and/or responses on this website to affirm that the information provided is accurate. However, BBB does not verify the accuracy of information provided by third parties, and does not guarantee the accuracy of any information in Business Profiles.

When considering complaint information, please take into account the company's size and volume of transactions, and understand that the nature of complaints and a firm's responses to them are often more important than the number of complaints.

BBB Business Profiles generally cover a three-year reporting period. BBB Business Profiles are subject to change at any time. If you choose to do business with this business, please let the business know that you contacted BBB for a BBB Business Profile.

As a matter of policy, BBB does not endorse any product, service or business.

© 2021, International Association of Better Business Bureaus, Inc., separately incorporated Better Business Bureau organizations in the US, Canada and Mexico and BBB Institute for Marketplace Trust, Inc. All rights reserved. *In Canada, trademark(s) of the International Association of Better Business Bureaus, used under license.

**EXHIBIT K, Page 10 of 12**

Get Accredited                    Business and Charity Login                    Contact

📍 My BBB

# Better Business Bureau®

Home > Missouri > Pevely > Timeshare Cancellation > Consumer Law Protection > Customer Reviews

❮ Share    🖶 Print

**« Customer Reviews**

## Customer Reviews

# Consumer Law Protection

📍 8600 Daniel Dunklin Blvd
Pevely, MO 63070

🌐 https://www.consumerlawprotection.com/

📞 (314) 686-4630

### Lisa P.

⭐ (1 star)                                                      12/14/2020

I went to a timeshare exit program seminar for these guys, and these guys had us fill out a bunch of paperwork.. We realized at some point that they were attempting to defraud us, and we got up and left. I have already received 3 credit cards THEY applied for, and there are two more being sent to me. They applied for these credit cards on our behalf, without our consent. $38,000 worth. They need to be stopped.

### Bill S

⭐ (1 star)                                                      11/09/2020

Think long and hard before releasing ANY funds( credit card, check cash). Once you do, you are committed and won't get a full refund if you reconsider. The reps are nice , the exit process is long no matter who you go thru but there are other options to which you dont pay /loose thousands of dollars.

**EXHIBIT K, Page 11 of 12**

3/24/2021                                  Consumer Law Protection | Reviews | Better Business Bureau® Profile

BBB Business Profiles may not be reproduced for sales or promotional purposes.

BBB Business Profiles are provided solely to assist you in exercising your own best judgment. BBB asks third parties who publish complaints, reviews and/or responses on this website to affirm that the information provided is accurate. However, BBB does not verify the accuracy of information provided by third parties, and does not guarantee the accuracy of any information in Business Profiles.

When considering complaint information, please take into account the company's size and volume of transactions, and understand that the nature of complaints and a firm's responses to them are often more important than the number of complaints.

BBB Business Profiles generally cover a three-year reporting period. BBB Business Profiles are subject to change at any time. If you choose to do business with this business, please let the business know that you contacted BBB for a BBB Business Profile.

As a matter of policy, BBB does not endorse any product, service or business.

© 2021, International Association of Better Business Bureaus, Inc., separately incorporated Better Business Bureau organizations in the US, Canada and Mexico and BBB Institute for Marketplace Trust, Inc. All rights reserved. The contents, trademarks of the International Association of Better Business Bureaus, used under License.

**EXHIBIT K, Page 12 of 12**

Get Accredited                          Business and Charity Login                          Contact

Home > Latest News > BBB Warning: Consumers lost thousands of dollars to timeshare exit company,
Square One Development Group, Inc.

# BBB Warning: Consumers lost thousands of dollars to timeshare exit company, Square One Development Group, Inc.

By BBB of Eastern & Southwest Missouri & Southern Illinois. July 7, 2020.



Consumers from across America tell Better Business Bureau (BBB) they have lost thousands of dollars to a St. Louis area timeshare exit business.

BBB advises consumers to use caution when doing business with **Square One Development Group, Inc.**, and three other businesses affiliated with the Des Peres, Missouri company - **Consumer Rights Council**, **Consumer Law Protection LLC** and **VOI Consulting Group**. Consumers state they believe Square One Development Group Inc. used misleading sales presentations, failed to honor contracts, did not issue refunds, and provided poor customer service.

Square One Development Group, Inc., has an "F" rating, the lowest on BBB's scale, due to unanswered and unresolved complaints. Consumers filed more than 30 complaints since June 2019. Consumers reported to BBB they incurred more than $350,000 in losses.

"Unfortunately, we continue to hear stories from consumers who put their trust in third-party companies to rid themselves of their unwanted timeshares, but only to find themselves deeper in debt," said Michelle L. Corey, BBB St. Louis president and CEO. "If you're looking to exit a timeshare, we urge you to contact your resort first before entering into an agreement with a third-party company that demands an up-front payment."

A Shamokin, Pennsylvania, man told BBB he signed a contract with Square One Development Group Inc. in July 2019 and paid $24,900 to exit four timeshare holdings. The man said he lost two of the timeshares when they foreclosed on him. When he contacted the resorts to see if Square One Development Group Inc. had done any work for him, both said they had no contact with the business about his timeshare.

The man said he has been trying to secure a refund from Square One Development Group Inc. He said the company said it would only refund his money if he retracted complaints he made to BBB, the Missouri Attorney General's Office and Federal Trade Commission. The man said he attempted to do as the company asked but has not received his refund. Per policy, BBB does not retract consumer

**EXHIBIT L, Page 1 of 3**

complaints.

"They have been horrible," the man said of Square One Development Group Inc. "They are much worse than the timeshare sales people. This has been so stressful."

A Monroe, Louisiana, man told BBB he paid Square One Development Group Inc. $15,500 in July 2019 to help him exit two timeshares. After hearing little from the company in the ensuing months, the man contacted his resort, which told him it had no contact with Square One Development Group Inc. "I don't believe Square One is doing anything and is just stringing us along," the man told BBB.

The man is seeking a refund, but the request was denied by Square One Development Group Inc. "They use a bunch of smoke and mirrors," the man said. "You can't trust what they say."

According to Missouri secretary of state records, Square One Development Group Inc. was registered in March 2005. It appears the company started offering timeshare exit services in 2018. **LouAnn Reed** is listed as the company president.

During its investigation, BBB found three other timeshare-exit businesses connected to Square One Development Group Inc. BBB found employees of Square One Development Group Inc. who also were employed by Consumer Rights Council, Consumer Law Protection LLC and VOI Consulting Group.

Consumer Rights Council and Consumer Law Protection LLC share the same address in Pevely, Missouri. Consumer Rights Council was registered as a non-profit organization with the state of Missouri in April 2020. An employee of Square One Development Group Inc. is listed as a contact person on state registration papers for Consumer Rights Council.

Consumer Law Protection was registered with the Missouri Secretary of State in July 2019. According to registration documents, LouAnn Reed's husband, **George Reed**, is listed as the manager for the company.

In June 2020, BBB received a complaint for Consumer Law Protection, LLC, from a Perry, Georgia, couple who told BBB it received a mailer from the Consumer Rights Council that promoted a timeshare exit seminar in their area. The couple said they attended a presentation made by representatives of Consumer Law Protection LLC. They said they paid $17,500 to the company to help them exit two timeshares.

The couple tried to rescind the contract the next day. When the couple called Consumer Law Protection LLC, operators said they were with Square One Development Group Inc. The couple said they believe Consumer Law Protection LLC mislead them. Consumer Law Protection LLC employees the couple dealt with are listed as Square One Development Group Inc. employees.

VOI Consulting Group is based in Las Vegas. According to Nevada state registration documents, the business was formed in December 2018. The managing members listed for VOI Consulting - **Dion Castro**, **Phillip Holguin**, **Carlos Fonseca** and **Eduardo Balderas** - are listed as employees of Square One Development Group Inc.

BBB's attempts to contact Consumer Rights Council, Consumer Law Protection LLC, and VOI Consulting Group were not successful.

In a response to a BBB inquiry on what Square One Development Group Inc. was doing to address its pattern of consumer complaints, the company wrote: "While we are always disappointed to get any complaint, we feel even the best companies receive some percentage of unjustified complaints."

BBB asked LouAnn Reed to explain the relationship between Square One Development Group Inc, Consumer Rights Council, Consumer Law Protection LLC and VOI Consulting Group. Reed did not answer BBB's questions.

BBB offers these tips on how to exit a timeshare holding:

- Before paying any money, research the company and its owners. Check the company's BBB Business Profile at BBB.org or by calling 888-996-3887.
- Contact the resort that originally sold you the timeshare to see if it has a deed-back program.
- Before paying any upfront money, make sure you have a signed contract outlining what is to be done, a timetable and an explanation of what happens if the business doesn't comply get you out of your timeshare within the specified period of time.
- Be wary of anyone claiming that they have a buyer for your timeshare or who promises to rent your timeshare, especially if they ask for an upfront fee.
- Pay with a credit card in case you need to challenge the purchase later.
- If you feel you have been misled, file complaints with BBB and the state's attorney general's office.
- For more information about the timeshare exit industry, refer to a study BBB released in June 2019.

**EXHIBIT L, Page 2 of 3**

# GET A QUOTE
from a BBB Accredited Business

© **2021, International Association of Better Business Bureaus, Inc., separately incorporated Better Business Bureau organizations in the US, Canada and Mexico and BBB Institute for Marketplace Trust, Inc. All rights reserved. *In Canada, trademark(s) of the International Association of Better Business Bureaus, used under License.**

**EXHIBIT L, Page 3 of 3**